UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ALLEN R. BUFORD, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:09-CV-342 CAN |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On July 28, 2009, Plaintiff, Allen R. Buford ("Buford"), filed his complaint in this Court. On October 27, 2009, both parties consented to jurisdiction in this Court. On December 23, 2009, Buford filed his opening brief and asked this Court to enter judgment in his favor or to remand this matter to the Commissioner. On April 12, 2010, Defendant, Commissioner of Social Security ("Commissioner"), filed its response brief. On May 6, 2010, Buford filed his reply brief. This Court now enters its ruling based upon the record of this case, which includes the pleadings, motions, the administrative record and the briefs of the parties.

**I.    PROCEDURE**

On April 21, 2005, Buford filed an application for disability insurance benefits, alleging an onset date of February 9, 2005. Buford claims he is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614.

On October 26, 2005, Buford's claim was initially denied. On January 30, 2006, Buford's claim was denied again upon reconsideration. On February 24, 2006, Buford filed a written request for a hearing. On January 8, 2008, Buford appeared at a final hearing before an Administrative Law Judge ("ALJ"). On September 2, 2008, the ALJ rendered his final decision

and found that Buford was not disabled. On October 29, 2008, Buford appealed the ALJ's decision to the Appeals Council. On May 29, 2009, the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on July 28, 2009, Buford filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Buford was 46 years old at the time of his alleged onset date of disability. The highest level of education that Buford has completed is the seventh grade. Buford's past relevant work experience includes industrial liner, final finisher and tank maker.

On November 30, 2001, Buford saw Henry DeLeeuw M.D., who performed a decompression and fusion surgery at the L4-S1 level of Buford's spine. Six weeks later, Dr. DeLeeuw opined that Buford was doing very well and could return to his physically-demanding job without restrictions on April 1, 2002.

In May of 2002, Buford met with Todd Graham M.D. and complained of back pain radiating into his left leg, which was interfering with his performance of heavy, physical work and required long hours of travel. Dr. Graham suggested restricted work duties, but Buford refused. On January 9, 2003, Dr. Graham opined that he was concerned about the daily number of Vicodin that Buford was taking. A CT myelogram taken one week later revealed a slight disc bulge at the L4-5 level but no herniation or nerve root impingement; a slight disc bulge at the

2

L5-S1 level with some slight impairment upon the filling of the L5 nerve root; and laminectomy defects at the L5-S1 and S1-2 levels.

On referral from Dr. Graham, Patrick Boylan M.D. administered epidural steroid injections to treat Buford's lower back pain and lumbar radiculopathy. However, in February of 2003, Buford reported that his back pain worsened after the injections and that the physical requirements of his job had increased. In March of 2003, also on referral from Dr. Graham, Steven Schroeder M.D. saw Buford for pain management and administered a steroid injection, which also provided Buford no relief. Dr. Schroeder additionally prescribed Oxycontin, Percocet, and Bextra.

In July 2003, Buford saw Thomas Reilly M.D., who diagnosed Buford with lumbar spondylosis, possible left L5-S1 radiculitis, and post-laminectomy syndrome. Dr. Reilly opined that Buford's surgical instrumentation might have been causing his pain. In September 2003, Dr. Reilly removed the instrumentation; and Buford reported doing somewhat better. However, thereafter, Buford's back pain inexplicably began to worsen.

In September 2004, Dr. Schroeder prescribed a TENS unit. Buford reported that it decreased his lower back pain while he was not working but did not help while he was working. However, Buford returned the TENS unit two weeks later and also did not follow through on Dr. Schroeder's referral to physical therapy. Dr. Schroeder again urged Buford to take medical leave or change professions and to attend physical therapy.

A December 2004 MRI of Buford's lumbosacral spine showed mild disc bulging at L1-2 and L2-3, minimal disc bulging at L4-5 without significant nerve root impingement or stenosis, severe degenerative disc disease at L5-S1 with mild disc bulging and no evidence of a recurrent

3

post-surgical disc extrusion or stenosis, and no significant post-surgical granulation tissue at the surgical site but some soft tissue enhancement near the thecal sac consistent with post-surgical granulation tissue. However, Dr. Schroeder observed that Buford's MRI did not reveal any significant findings that would explain his lower back pain. In January 2005, Dr. Schroeder reported that Buford had violated his narcotic medications contract by obtaining medication from another doctor and taking higher doses of medication than prescribed. As a result, on February 18, 2005, Dr. Schroeder advised Buford that he would no longer prescribe him any medications and that he should seek another doctor.

That same day, Buford saw a neurologist, David Cockerill M.D. Dr. Cockerill observed that Buford had a poor range of motion and a mild positive left straight leg raising test but had full motor strength, and normal sensation, reflexes and fine motor skills. Dr. Cockerill diagnosed Buford with post-laminectomy syndrome and opined that Buford would probably not benefit from any further surgical spinal interventions.

On July 25, 2005, Buford saw Peter Sices M.D.. Buford complained of worsening lower back pain that radiated into his left leg, which prevented Buford from mowing the lawn, driving, and doing any lifting, and which limited Buford to walking no more than one-half of a block. Buford also complained of having severe headaches once or twice a day. Buford reported that he had been prescribed Lithium to treat his bipolar disorder for about seven years and indicated that the Lithium helped to control his mood swings. However, Buford noted that he had recently stopped taking Lithium because he could not afford to pay for it. Dr. Sices observed that Buford could partially squat, had a limited range of motion in some movements of his lumbar spine, but had a full range of motion in his other joints. Dr. Sices diagnosed Buford with lumbar

4

radiculopathy in his left leg that was not amenable to surgery at that time. Dr. Sices opined that Buford could carry light objects in either arm without difficulty and had no impairments related to gait, coordination, memory, concentration, attention span, social interaction or fine or gross manual dexterity.

On October 17, 2005, state agency reviewing physician Dr. A. Lopez completed a Physical Residual Functional Capacity ("RFC") Assessment, in which he opined that Buford could perform light work and occasionally perform all postural activities, except that he could never climb ladders, ropes, or scaffolds. State agency reviewing physician, Dr. J. Sands, subsequently reviewed the evidence in Buford's file and affirmed Dr. Lopez's opinion as written.

On December 27, 2005, Dr. Sices again examined Buford, who complained of continued lower back pain that radiated up into his neck and down into his left leg and foot. Buford reported that he was taking Methadone, Vicodin, Lithium, Amitriptyline, and Xanax. Dr. Sices opined that the prognosis for Buford's chronic degenerative back pain was poor but noted that Buford could carry light objects in either arm without difficulty. Dr. Sices also advised Buford to quit smoking.

On January 2, 2006, Joseph Caruso M.D., Buford's long-time primary care physician, wrote a letter at Buford's counsel's request, stating that Buford had not received "any significant subjective benefit" from his treatment for chronic back pain. On February 14, 2006, Buford saw Dr. Caruso for the first time since December 2005, complaining of difficulty breathing and chest congestion for the prior week. Dr. Caruso diagnosed Buford with an anxiety disorder and refilled his prescription for Xanax. On December 1, 2006, Bufford again saw Dr. Caruso, who

5

increased the dosage of Buford's Xanax and prescribed Oxycontin.

Three weeks later, Buford saw Dr. Caruso and complained of increased pain after falling one week earlier. Less than one month later, Buford again saw Dr. Caruso and complained of having near daily anxiety attacks. Dr. Caruso noted that Buford showed no overt evidence of anxiety. Nevertheless, Dr. Caruso still prescribed Lexapro and refilled Buford's Oxycontin and Xanax. Five months later, Dr. Caruso indicated that Buford had already taken the one-month supply of Oxycontin that had been prescribed 12 days earlier and opined that Buford was addicted to narcotic pain medication as a result of his treatment. Dr. Caruso subsequently referred Buford to the Memorial Hospital Pain Control Center to be evaluated for a morphine pump.

On June 6, 2007, Buford was referred to Rose Navarro M.D., who first saw Buford to evaluate his complaints of radiating lower back pain. Dr. Navarro explained to Buford that illicit drugs could not be taken with opiates and opined that due to his history of alcohol and narcotic abuse and his bipolar disorder, Bufford should be seeing a psychiatrist. Dr. Navarro also ordered a CT myelogram and an electromyography ("EMG") of Buford's slower extremities. The July 2007 EMG report showed evidence of failed back syndrome and chronic radiculopathy at the L5-S1 level of Buford's lumbar spine. On August 9, 2007, Dr. Navarro surgically tied a spinal cord stimulator onto Buford's skin to treat his lower back pain. In October 2007, Buford saw Dr. Caruso for a follow-up appointment, who diagnosed Buford with lumbago and prescribed Percocet.

A January 4, 2008 MRI of Buford's lumbar spine showed mild disc bulging at L1-2 with a slight impression upon the thecal sac, no significant disc abnormality at L2-3, generalized disc

bulging with left foraminal stenosis and potential impingement upon some nerve roots, moderate spinal stenosis, degenerative disc disease causing significant disc space narrowing at L3-4, significant degenerative disc disease with disc space narrowing and bone spurs at L4-5, and post-surgical scar tissue adjacent to the thecal sac at the L4, L5, and S1 levels.

On January 22, 2008, Buford saw Dr. Caruso for a follow-up appointment and complained of lower back pain and numbness in his left leg and foot. Dr. Caruso observed that Buford appeared lethargic, had somewhat slurred speech, had decreased range of motion, and pain in his spine. Dr. Caruso diagnosed Buford with degeneration of a lumbar or lumbosacral disc, for which he prescribed morphine sulfate, unspecified thoracic or lumbosacral neuritis or radiculitis. Dr. Caruso also advised Buford to contact his orthopedic surgeon.

  B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

  C. Buford's Motion for Reversal or Remand

To be entitled to benefits under the Social Security Act, Buford must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not listed, the ALJ assesses the claimant's residual functional capacity ("RFC"), which in turn is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that Buford's degenerative disc disease was a severe impairment. However, Buford's impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Buford's RFC allowed him to perform light work as defined in 20 C.F.R. 404.1567(b), except that Buford needed to alternate sitting and standing at will. The ALJ additionally concluded that Buford could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The ALJ found that Buford was unable to perform his past relevant work. However, after considering the testimony of the vocational expert ("VE"), the ALJ found that Buford could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Buford was not disabled. Accordingly, the ALJ denied Buford's application for disability insurance benefits.

The major issues this Court must resolve are: (1) whether the ALJ erroneously evaluated the severity of Buford's bipolar disorder, (2) whether the ALJ improperly evaluated the testimony of Buford's wife, and (3) whether the ALJ's step five determination was supported by substantial evidence. This court will address each of Buford's arguments in turn.

        1.      <u>The ALJ sufficiently articulated his evaluation regarding the severity of Buford's mental impairments.</u>

Buford argues that the ALJ erroneously found his mental limitations to be a non-severe impairment. A severe impairment is one that significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521; <u>Taylor v. Schweiker</u>, 739 F.2d 1240, 1242 (7th Cir. 1984). Basic work activities are the abilities needed to do most jobs such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, seeing, hearing, speaking, understanding, remembering simple instructions, use of judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting.

9

See 20 C.F.R § 404.1521(b); Bunch v. Heckler, 778 F.2d 396, 401 (7th Cir. 1985). The statements of the claimant alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508. Instead, a physical or mental impairment must be established by medical evidence through signs, symptoms, and laboratory findings. Id.

While the ALJ found that Buford's degenerative disc disease was a severe impairment, the ALJ also concluded that Buford's bipolar disease was non-severe. Buford believes this to be erroneous for several reasons. First, Buford argues that the ALJ completely failed to consider evidence of Buford's bipolar disorder. This Court finds this argument to be completely without merit. In fact, this Court notes that the ALJ discussed his consideration of Buford's bipolar disorder numerous times throughout two pages of his opinion. For instance, the ALJ noted that he considered Buford's bipolar disease in evaluating the four broad functional areas set out in the disability regulations for evaluating mental disorders. In doing so, the ALJ found that in the area of daily living, Buford had no limitation due to his mental impairment. Similarly, in the areas of social functioning and concentration, persistence or pace, the ALJ found that Buford had only mild limitations. Finally, in the fourth functional area, the ALJ determined that Buford experienced no episodes of decompensation.

Next, Buford very briefly argues that, while Lithium helped his bipolar disorder, he was unable to afford mental health treatment. This Court construes this argument as a challenge to the ALJ's conclusion that, because Buford refused to seek any mental health treatment, Buford's bipolar disease was a non-severe impairment. However, an ALJ may appropriately discount a claimant's argument that he could not afford medical care when there is no evidence that he sought and was denied low-cost or free care. See Osborne v. Barnhart, 316 F.3d 809, 812 (7th

Cir. 2003) (quoting Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999)). Buford has not stated that he sought, or attempted to qualify for, low-cost or free mental health services. As such, the ALJ did not err by discounting the limiting effects of Buford's bipolar disorder because he did not seek mental medical assistance.

Finally, Buford contends that the ALJ failed to specifically consider a note written by Dr. Caruso, which described Buford as lethargic and having slurred speech, when the ALJ found that Buford had only mild limitation in the area of concentration. However, in his opinion, the ALJ specifically noted that there were no treatment notes from Dr. Caruso that supported Buford's allegations that he had problems with concentration. Additionally, it can be noted that, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Accordingly, this Court finds that the ALJ sufficiently considered and discussed the record evidence in finding that Buford's bipolar disease was a non-severe impairment. Indeed, this Court notes that the ALJ provided an exhaustive explanation of his reasons for not finding Buford's bipolar disease to be a non-severe impairment, amounting to more than two pages of the ALJ's opinion. As such, this Court concludes that the ALJ's findings in this regard are supported by substantial evidence.

> 2. The ALJ's determination that Buford's wife's testimony was not credible is supported by substantial evidence.

Next, Buford briefly argues that the ALJ unfairly discredited several aspects of the testimony supplied by Buford's wife. Specifically, Buford argues that it was inappropriate for the ALJ to accept some of his wife's testimony while discrediting other aspects of it, specifically

11

in regards to testimony concerning Buford's drug and alcohol use.

Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). See also Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006). Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

In finding Buford to be less than fully credible, the ALJ pointed out the conflicting testimony of Buford and his wife regarding Buford's drug and alcohol use. In particular, the ALJ noted that Buford purported to have ceased abusing alcohol and taking illegal drugs in January 2005. However, the ALJ noted that Buford's wife stated that Buford stopped such abuse in August 2004. Similarly, the ALJ also noted that Buford indicated in a disability application that he was still abusing alcohol and drugs as of June 2005. The ALJ went on to note that Buford told Dr. Sices at a July 2005 examination that he was drinking six to eight beers and using marijuana daily. Similarly, the ALJ noted that Buford then told Dr. Sices at an examination in December 2005 that he had not abused alcohol or illegal drugs prior to his July 2005 examination. Based upon each of these inconsistencies, the ALJ found the testimony of

12

both Buford and his wife to not be fully credible, as all the statements made could not be true.

In addition to noting Buford's inconsistent reporting regarding his alcohol abuse, the ALJ also relied upon numerous reasons for discounting Buford's testimony. For instance, the ALJ also considered Buford's subjective statements as to his pain and other symptoms, Buford's failure to seek mental health treatment, Buford's activities of daily living, Buford's history of alcohol and drug use, and Buford's prior drug-seeking behavior. This Court finds such a lengthy discussion of Buford's credibility determination by the ALJ to be sufficiently articulated.

Accordingly, because the ALJ relied on substantial evidence in the record and sufficiently articulated his reasoning for discrediting Buford and his wife's testimony, and because the ALJ additionally bolstered his credibility determination with other evidence in the record, this Court concludes that the ALJ's credibility determination was reasonable.

3. <u>The ALJ's reasonably relied on the Vocational Expert's testimony.</u>

Finally, Buford argues that the ALJ failed to resolve an inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, Buford argues that the ALJ failed to resolve the issue that the DOT does not include a sit/stand option, which Buford's RFC required.

At Step Five, if the claimant cannot perform his past relevant work, then the ALJ must determine if he can perform other work in society. See 20 C.F.R. § 404.1520(g). If the claimant can perform a significant number of jobs available in the economy then the claimant is not disabled. Id. When a VE provides testimony about the requirements of a job or occupation, and there is an apparent conflict between the VE's testimony and the information provided in the DOT, the ALJ has an affirmative responsibility to obtain a reasonable explanation. Overman v.

13

Astrue, 546 F.3d 456, 462 (7th Cir. 2008). However, where claimant's counsel does not identify a conflict at the hearing, claimant must show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. Id.

Buford argues that the VE's testimony conflicted with the DOT and the ALJ failed to obtain a reasonable explanation for the apparent conflict. Specifically, Buford argues that this was erroneous since the DOT does not consider a sit/stand option. However, this Court has doubts whether the VE's testimony was even in conflict with the DOT. Rather, this Court notes the Seventh Circuit's law, holding that, the duty to inquire arises only when the conflict between the DOT and VE testimony is apparent. See Zblewski v. Astrue, No. 08-1755, 2008 WL 5206384, *4-5 (7th Cir. 2008) (citing, Overman v. Astrue, 546 F.3d 456, 463-64 (7th Cir. 2008)). However, simply because the DOT does not address the subject of sit/stand options, it is not apparent that testimony conflicts with the DOT. Id. Accordingly, this Court finds that the ALJ properly relied upon the VE's testimony.

In contrast, this Court notes that, at the hearing, the ALJ did ask the VE, whether the sit/stand option was in congruence with the number of DOT sedentary jobs. See Tr. 458-459. As such, although the ALJ did not explain this in more detail in his opinion, the ALJ did attempt to resolve any apparent discrepancies, despite Buford's assertions to the contrary.

As a final note, this Court adds that all of Buford's three arguments were brief, particularly his third argument, which amounted to all of six sentences. This degree of brevity led to woefully underdeveloped arguments, which this Court found to be inadequate and soundly unpersuasive. Counsel is cautioned that this Court would have been within its discretion to consider such undeveloped arguments as waived. An undeveloped argument is a waived

argument. See Kochert v. Adagen Med. Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2007); Boyd v. Owen, 481 F.3d 520, 524-25 (7th Cir. 2007); Gates v. Towery, 507 F. Supp. 2d 904, 924 (N.D. Ill. 2007) ("[A]ny arguments that are . . . underdeveloped are deemed waived.").

## III. CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ sufficiently articulated his finding that Buford did not have a severe mental impairment. In addition, this Court concludes that the ALJ's credibility evaluation of the testimony given by Buford's wife is substantially supported and sufficiently articulated. Finally, this Court concludes that the ALJ reasonably relied on the VE's testimony in his Step Five analysis. Therefore, the Court **DENIES** Buford's motion for remand. [Doc. No. 17]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is **INSTRUCTED** to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this August 2, 2010

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge